No. 32,471

CHARLES W. JOHNSON, as Receiver of The Commercial State Bank of Rosedale, *Appellant*, v. L. E. WILSON, *Appellee*.

(52 P. 2d 631)

Opinion filed December 7, 1935.

*J. H. Brady* and *N. E. Snyder,* both of Kansas City, for the appellant.
*Louis R. Gates,* of Kansas City, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action by the receiver of an insolvent state bank against a stockholder to enforce the additional liability imposed by R. S. 9-110. Judgment was for defendant. Plaintiff appeals.

The bank closed September 18, 1930. At that time the name of defendant appeared on the stock register of the bank as the owner of six shares of stock issued January 10, 1929. He refused to pay the double liability. This suit followed.

In January, 1929, the president of the bank asked defendant to be a director. Defendant replied that he had no stock. The president of the bank told him he would transfer the qualifying number of shares to him. Defendant signed the oath of a director on January 10, 1929. On January 10, 1930, defendant took part in the meeting of the board of directors. January 10, 1929, defendant took part in a meeting of the board. April 10, 1929, defendant signed and swore to a report of a quarterly meeting of the board of directors. This report is required by statute to be made and filed in the office of the bank commissioner. On January 10, 1930, defendant took the oath of a member of the board of directors. This was required by statute. It contains, among other things, the following statement:

". . . and I do solemnly swear that I am the owner, in good faith and in my own right, of five [six] shares of the stock in said bank, being either subscribed by me or standing in my name on the books of said bank."

We shall set out the story of defendant in the light most favorable to him. Defendant insists that no stock was transferred to him in 1929 and none was ever delivered to him. He testified that he had an understanding with the president of the bank in 1930 that he would only serve until February of that year; and that in February when he asked the president if he had arranged about his getting off the board he said he had not but he would do so at once. He also testified that the president of the bank told him that he had transferred the stock to Doctor Williams, and that when he asked Williams about it he said he had never received it. He further testified that he then called at the bank and asked the teller to examine the stock register to see if the stock had been transferred; that the teller was unable to find where any stock had ever been

transferred to him; and that he went immediately to his office and wrote out a resignation from the board of directors, took it to the bank and handed it to the president. The teller testified that when he looked at the stock register, at the request of defendant, the stock certificate No. 150, which appeared in the name of the defendant when the bank closed, was still in the book and was not filled out. It may be stated here that the certificate stub that is kept in the book for certificate No. 150 was not filled out when the bank closed. Without setting out the details of the evidence it may be stated there was circumstantial evidence that certificate No. 150 was issued surreptitiously after the teller had inspected the stock register at the request of defendant and before the bank was closed.

At the close of the evidence of defendant plaintiff moved the court for a directed verdict. This was overruled. The jury returned a general verdict in favor of defendant and answered special questions in his favor. Judgment was rendered accordingly. Various additional motions were filed by the plaintiff, all of which were overruled. Hence this appeal. We will consider the motion for a directed verdict.

The position of defendant is that there was no evidence that certificate number 150 for six shares of capital stock of the Commercial State Bank of Rosedale in the name of L. E. Wilson was issued prior to the closing of the bank on September 18, 1930, with the knowledge or consent or under the authority and direction of the appellee, Wilson. There was no evidence that certificate No. 150 was ever delivered to the appellee, Wilson; that any person had ever executed certificate No. 150 as an officer of the bank, or that any person ever attested it. There was no evidence that appellee Wilson was ever asked to receipt the stub of certificate No. 150, and no evidence as to when, where, or by whom the writing on the face of the stub of certificate No. 150 was made.

While this is true, the fact is that when the bank closed the stock register of the bank showed that defendant owned six shares of stock. The double-liability law is not for the protection of the bank or the bank president. It is for the protection of the depositors in the bank and its other creditors—for the public generally. Records are required to be kept in the office of the bank commissioner on that account. On January 10, 1930, defendant swore that he was the owner in good faith of six shares of stock in the bank. This oath was required by statute to be made and filed in the office of

the bank commissioner. Defendant could not be heard to say that he was not the owner of stock at the time this oath was filed. He was estopped from doing any such thing when his doing so would conflict with the public interest. This situation remained the same until the day when he was hunting the president of the bank, still endeavoring to get rid of his stock. Then he resigned as director. Did that affect his stock ownership? We hold not. The situation as to stock ownership was not changed by his resignation from the board. The liability which the plaintiff is seeking to enforce here is not that of a member of the board of directors but of a stockholder. For the sake of achieving the end for which the double-liability law was enacted, it must be made extremely difficult for one whose name appears on the books of the bank as a stockholder to escape this liability.

This is the reason for the decision of this court announced in *State Savings Bank v. Allen,* 119 Kan. 128, 237 Pac. 646. There the court said:

"In this state, for reasons of public policy, the objective test is applied to determine liability. Banking is affected with a public interest, and all state banks are under regulatory supervision of the state bank commissioner. A double record of the issue, ownership and transfer of stock must be kept, one in the bank and one in the bank commissioner's office. This is done for the benefit of the bank, of its creditors, of taxing officials, and in the interest of the public, represented by the bank commissioner. It is their privilege to rely on the records, and the bank commissioner may not be embarrassed in winding up the affairs of an insolvent bank by an investigation of the fact of ownership, determination of which depends ultimately on a jury's estimate of the registered holder's testimony regarding his mental attitude. If stock should be issued or transferred to a person without his knowledge or authority, nothing more appearing, he would not be subject to the liabilities of a stockholder; but whenever such a person does a voluntary act which stamps the certificate with apparent validity and vitality, he is bound by the record, whatever his intention may have been. If he desires to avoid the consequences of ownership he must see to it that the records do not present him as a registered holder." (p. 130.)

Here there was a double set of records as to the stock ownership. Admitting for the sake of argument that there was something queer about the record in the bank, there was nothing wrong about those in the bank commissioner's office. These records showed the stock ownership to be in the defendant. We hold, therefore, that the motion of plaintiff for a directed verdict should have been sustained.

The judgment of the trial court is reversed with directions to enter judgment for plaintiff.